IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| JOHN PAUL DURBIN | : |
| | : Civil Action 2:25-cv-00013 |
| Plaintiff, | : |
| | : Judge Michael H. Watson |
| v. | : |
| | : Magistrate Judge Kimberly A. Jolson |
| DONALD TRUMP, | : |
| President of the United States, *et al.*, | : |
| | : |
| Defendants.[1] | : |

**DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

---

Defendants respectfully move to dismiss this action under Federal Rules of Civil Procedure 12(b)(1), and 12(b)(6). In support of this motion, Defendants submit the following memorandum in support.

                                                                                     Respectfully submitted,

                                                                                     KELLY A. NORRIS
                                                                                     ACTING UNITED STATES ATTORNEY

                                                                                     s/Christopher R. Yates
                                                                                     CHRISTOPHER R. YATES (0064776)
                                                                                     Assistant United States Attorney
                                                                                     Attorney for Defendants
                                                                                     303 Marconi Boulevard, Suite 200
                                                                                     Columbus, Ohio 43215
                                                                                     Christopher.Yates@usdoj.gov

---

[1] Although not entirely clear, the undersigned understands that Defendants are sued in their official capacities, and thus, the current President of the United States is substituted as his predecessor. To the extent the Amended Complaint asserts individual capacity claims, the undersigned does not represent any Defendant in their individual capacity. Should the Court deem the Amended Complaint to include such claims, it should so clarify and permit any individual capacity Defendants to respond to the Amended Complaint by a date certain, affording them an opportunity to seek and obtain representation. Defendants do not hereby waive any defense or defenses that may be available to any individual capacity defendants under Rule 12 or otherwise, including, but not limited to, insufficient or untimely service of process, lack of jurisdiction, and immunity from suit.

## MEMORANDUM IN SUPPORT

I.     STATEMENT OF FACTS AND THE CASE

*Pro se* Plaintiff John Paul Durbin (hereinafter Mr. Durbin) seeks monetary, declaratory, and injunctive relief against dozens of federal government officials[2] arising from alleged violations related to the accumulation of the national debt and alleged violations of his First Amendment rights from the failure to respond in writing to his requests for "unfettered access" to the Capitol and congressional office buildings and by refusing to grant him a credential and standing as a professional journalist. Mr. Durbin's suit should be dismissed for both lack of jurisdiction and failure to state a claim.

First, the Court lacks jurisdiction because Mr. Durbin lacks standing to assert his claims against Defendants. Additionally, the United States has not waived sovereign immunity for the claims asserted in his Amended Complaint, and Mr. Durbin's claims against the Congressional defendants concern legislative activity for which they have absolute immunity under the Speech or Debate Clause. Finally, in addition to the jurisdictional issues presented by Mr. Durbin's Amended Complaint, he fails to state a claim upon which relief can be granted. Accordingly, the Amended Complaint should be dismissed under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

Mr. Durbin previously brought a similar suit in the United States District Court for the District of Columbia. *See generally*, *John Paul Durbin v. Nancy Patricia Pelosi, et al.*, Case No. 22-cv-3222, 2023 WL 5846677 (D.D.C. Sept. 11, 2023). In that earlier action, Mr. Durbin alleged that during 2021 and 2022 he attempted to access several congressional office buildings but was denied entry due to temporary COVID-19 restrictions. *Id.* Memo. Op. ECF No. 16, Page 1. In that case, the House and Senate subsequently withdrew their COVID-19 policies that previously restricted public access to the congressional office buildings and the Court thus dismissed Mr. Durbin's suit as moot:

---

[2] Plaintiff sues dozens of high-ranking executive branch officials including President Trump and former President Biden, as well as dozens of Members of Congress and Congressional Officers.

"Because these voluntary recissions cure Mr. Durbin's only cognizable injury and because it is entirely speculative that he will be denied access to congressional office buildings in the future, the Court grants the Defendants' motion to dismiss this case as moot." *Id.* Memo. Op. ECF No. 16, Page 1.[3]

In the Amended Complaint in the case before this District Court, Mr. Durbin does not claim that he was "denied access to congressional office buildings." Mr. Durbin has not attempted to physically gain "access to congressional office buildings." Of his 142-page Amended Complaint, Mr. Durbin's sour grapes for dismissal of his prior suit is crystalized in 3 of his 402 numbered allegations:

> 314. Plaintiff was once denied entrance into the Complex, Wednesday, October 27, 2021. All of those points, the costs and the human toil, raised in the preceding paragraph, were paid in full by the Plaintiff on that trip. Never again, Plaintiff said, without a formal, written understanding for Plaintiff's access. While that 2021 instance occurred during Covid-19 restrictions, Plaintiff suspects that there exist unconstitutional and illegal, non-public, non-disclosed rules of the Board, its chief of police, and its entire police force, "acting on behalf of individual members of Congress," attempting to control—*and interfere with*—the constitutionally protected access by citizens, by this Plaintiff, to their congressional offices. The Capitol Police barely and vaguely address issues of citizen access on its public web pages, declaring that citizens on "official business" are free to drop off letters, as they also state that the seven congressional office buildings in the Complex are "open to the public" during normal business hours.

> 315. Accordingly, Plaintiff has sought, asked, and repeatedly requested by his written correspondence to Defendant members of Congress, their preapproval for his free-and-easy access—as is routinely accorded by these members of Congress to their home-state constituents. Plaintiff has made these requests directly [to] these Defendant members of Congress. Alas, Plaintiff is an Ohioan. That means that Plaintiff is not a constituent—in the formal sense, a citizen-voter residing in the congressional district—of 434 members of the House of Representatives nor 98 senators. Doesn't matter, Plaintiff asserts his First Amendment rights include access to all 435 representatives and all 100 senators. The Fourteenth Amendment's equal protection clause can, should, does, and must apply to every citizen for their reasonable and ordinary access to any member of Congress, at the Complex, as is formally, informally, and easily accommodated every day by Defendant members of Congress to their home-state voters, *constituents*, and citizens. Further, these written requests to members of Congress, by the reasonable and ordinary nature of the access requested, a simple "drop in, unscheduled visit," do

---

[3] By confirmation and evidence these Defendants attached to their Motion to Dismiss both the House Rescission Order, and the Senate Rescission Order, and directed both the bench and Mr. Durbin to online access via *Visiting Capitol Hill, Visitor Information, Building Access & Hours*, available at https://www.uscp.gov/visiting-capitol-hill/visitor-information/building-access-hours (last accessed Feb. 27, 2023). *Id.* Defs.' Mot. to Dismiss, ECF Nos. 6, 6-1, Page 7, fn. 2. Defendants went so far as to publish specific congressional office building public access hours for Plaintiff *pro se*'s elucidation: "Presently, House Office Buildings (Cannon, Ford, Longworth, and Rayburn) are open to the public Monday through Friday from 7:30 a.m. through 7:00 p.m. (with doors closing at 5:00 p.m. when the House is in recess). *See id.* Also at present, the Senate Office Buildings (Dirksen, Hart, and Russell) are open to the public Monday through Friday from 7:30 a.m. through 8:00 p.m. (with doors closing at 6:30 p.m. when the Senate is in recess)." (citations omitted from original).

3

> not present an undue burden upon members of Congress, their staff, to the Capitol Police, or anyone else in any formal positions in the Complex. Yet every request has been met with stony silence.
>
> 316. Defendant members of Congress, by their refusal to respond to the written requests, have denied Plaintiff's First Amendment rights to the Free Exercise of his Religion in the Complex. That right, by itself, and in the 15 possible combinations with speech, press, assembly, and petition.

See Am. Compl., ECF No. 6-2, PAGEID #: 213-14, ¶¶ 314-16 (emphasis in original).

With reference to the foregoing Amended Complaint, this Court is presented with the novel concept that there exists an actionable claim under "Plaintiff's First Amendment rights to the Free Exercise of his Religion in the Complex…and in the 15 possible combinations with speech, press, assembly, and petition," when, "Defendant members of Congress," meet "with stony silence" Plaintiff's demand for "preapproval for his free-and-easy access," "to all 435 representatives and all 100 senators" within the Capitol and congressional office buildings. And until such time as Mr. Durbin is afforded this "formal, written understanding for Plaintiff's access," he has not (since "Wednesday, October 27, 2021") and "[n]ever again" will attempt "entrance into the Complex."

Mr. Durbin's motivation to be bestowed "preapproval for his free-and-easy access," "to all 435 representatives and all 100 senators" within the Capitol and congressional office buildings, is his assertion that the Executive, and Legislative branches of government have unlawfully failed in their legislative, and purse-string roles, and so Mr. Durbin must compel all members of Congress to meet with him to discuss his views on their quintessential legislative activities regarding spending and debt. *See* Am. Compl., ECF No. 6-2, PAGEID #: 212, ¶ 310 ("*The Durbin Report* (which would have been his first book, the culmination of a ten-year-long effort to report on the spending-and-debt games of Congress…"); *see also*, ECF No. 6-1, PAGEID #: 182-207, ¶¶ 199-301; *id.* at ECF No. 6-2,

4

PAGEID #: 208-212, ¶¶ 302-310.[4]

Mr. Durbin couches his mandate to direct the Executive and Legislative functions as part-and-parcel of his "Constitutional Rights of Freedom of Press as guaranteed by the First Amendment." *See* Am. Compl., ECF No. 6-2, PAGEID #: 219-20, ¶¶ 336-346.

Defendants respectfully assert that Mr. Durbin's Amended Complaint does not state a claim, and if a claim can be teased out of his manifesto, he lacks standing to pursue it, this Court lacks subject matter jurisdiction to hear it, and Defendants have absolute immunity, having not expressly waived sovereign immunity, and legislative immunity.[5]

## II.      STANDARDS OF REVIEW

Federal Rule of Civil Procedure 12(b)(1) provides for dismissal when the court lacks subject matter jurisdiction. Without subject matter jurisdiction, a federal court lacks authority to hear a case. *Lightfoot v. Cendant Mortg. Corp.*, 580 U.S. 82, 92 (2017). Challenges to subject-matter jurisdiction under 12(b)(1) "come in two varieties: a facial attack or a factual attack." *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 440 (6th Cir. 2012) (quoting *Gentek Bldg. Prod., Inc. v. Sherwin–Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007)). "Under a facial attack, all of the allegations of the complaint must be taken as true, much as with a Rule 12(b)(6) motion." *Id.*; *see also United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). Therefore, for a complaint to allege jurisdiction adequately, "it must contain non-conclusory facts which, if true, establish that the district

---

[4] ("CLAIMS FOR RELIEF, Count I: Violation of Borrowing Money," "Count II: Violation of Debt Payments," "County III: Violation of Reporting Requirements," "Count IV: Violation of Regulating the Value of Money," "Count V: Violation of Necessary Laws," "Count VI: Violation of Money Drawn From Treasury For Appropriations Made by Law," "Count VII: Violation to Advise Congress," "Count VIII: Violation of 31 U.S.C. § 3101(b), Illegal Suspensions of the Public Debt Limit…", "Count IX: Violation of the Debt Requirement, Fourteenth Amendment," "Count X: Violation of the Annual Appropriation Law by Congress.")
[5] Since the District Court for the District of Columbia dismissed this lawsuit for want of Plaintiff *pro se*'s standing, and lack of jurisdiction for mootness pursuant to Federal Rule of Civil Procedure 12(b)(1), Defendants, in the interest of judicial economy, do not here address the numerous other grounds upon which the Amended Complaint is subject to dismissal. Defendants respectfully request the right to brief alternative grounds should this Court deny the instant motion.

court had jurisdiction over the dispute." *Miller v. City of Cincinnati*, 870 F.Supp.2d 534, 539 (S.D. Ohio 2012); *see also Dehen v. Ohio State Univ.*, No. 2:23-cv-517, 2023 U.S. Dist. LEXIS 132477, at *4 (S.D. Ohio June 5, 2023) (Watson, J.) (citing *Rote v. Zel Custom Mfg. LLC*, 816 F.3d 383, 387 (6th Cir. 2016)).

Under a factual attack, however, a district court may "weigh evidence to confirm the existence of the factual predicates for subject matter jurisdiction." *Id*. The court may consider affidavits, documents, and other evidence in support of the motion, and the court may even hold an evidentiary hearing where necessary. *Ohio Nat. Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990). Here, the United States makes both a facial and factual challenge to the Court's jurisdiction. In both inquiries, Plaintiff bears the burden of demonstrating that the Court has and may exercise jurisdiction over the subject matter of the lawsuit. *DXL, Inc. v. Commonwealth of Kentucky*, 381 F.3d 511, 516 (6th Cir. 2004) (overruled on other grounds).

Additionally, a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) operates to test the sufficiency of the complaint. *Estate of Mikinah Smith v. Hamilton Cty. Dep't of Job & Family Servs.*, No. 1:06-cv-362, 2007 WL 2572184, at *3 (S.D. Ohio Aug. 31, 2007). When ruling on a Rule 12(b)(6) motion, a court is required to construe the pleadings in the light most favorable to the plaintiff and accept as true plaintiff's well-pleaded factual allegations. *Id.* (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). "A court, however, will not accept conclusions of law or unwarranted inferences which are presented as factual allegations." *Id.* (citing *Blackburn v. Fisk Univ.*, 443 F.2d 121, 124 (6th Cir. 1974)).

"While courts are properly charged with protecting the rights of all who come before it [sic], that responsibility does not encompass advising litigants as to what legal theories they should pursue." *Young Bok Song v. Gipson,* 423 F. App'x 506, 510 (6th Cir. 2011). Although this Court "liberally construe[s] *pro se* complaints and hold[s] such complaints to a less stringent standard than pleadings

6

prepared by attorneys . . . this lenient treatment has limits." *Frengler v. Gen. Motors*, 482 F. App'x 975, 976–77 (6th Cir. 2012) (citing *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004); *see also Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989) ("courts should not have to guess at the nature of claim asserted"); *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). "Even a *pro se* pleading must provide" both the Court and the opposing party with the claim and relief sought. *Frengler*, 482 F. App'x at 977.

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must first comply with Rule 8(a)(2), which requires "'a short and plain statement of the claim showing that the pleader is entitled to relief,'" in order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) A plaintiff is also obliged "to provide the grounds of his entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555 (citations and internal quotation marks omitted)). And, while a complaint need not contain "detailed" factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Id.* (quoting *Twombly*, 550 U.S. at 555 (citation and internal quotation marks omitted)); *see also League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (the factual allegations in a complaint need not be detailed but they "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief.") (emphasis in original).

In adjudicating a Rule 12(b)(6) motion, a court may consider "the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Guidotti v. Legal Helpers Debt Resol.*,

7

*L.L.C.*, 716 F.3d 764, 772 (3d Cir. 2013) (quoting *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010)); *Gulfside Casino P'ship v. Churchill Downs Inc.*, 861 F. App'x 39, 42–43 (6th Cir. 2021) ("Sixth Circuit case law is very clear that courts may consider documents that are referenced in the plaintiff's complaint and that are central to plaintiff's claims.").

Finally, "[i]t has long been settled that a federal court has no authority 'to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it." *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992) (*quoting Mills v. Green*, 159 U.S. 651, 653 (1895))

### III.  LAW AND ARGUMENT

#### A.  Mr. Durbin does not have standing.

Defendants move to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) because Mr. Durbin does not have standing and the Court consequently lacks subject matter jurisdiction.

"Article III of the Constitution limits the jurisdiction of federal courts to 'Cases' and 'Controversies.'" *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2341 (2014) (U.S. Const. Art. III, § 2). "[S]tanding is an essential and unchanging part of the case-or-controversy requirement of Article III." *United States v. Missouri*, 114 F. 4th 980, 984 (8th Cir. 2024) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). "To demonstrate Article III standing, a plaintiff 'must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.'" *Id.* (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)). These elements are "an indispensable part of the plaintiff's

case." *Lujan*, 504 U.S. at 561. Mr. Durbin, as the party invoking federal jurisdiction, bears the burden of establishing these elements. *Spokeo*, 578 U.S. at 338.

A court "may *sua sponte* dismiss a claim…where it is patently obvious that the plaintiff cannot possibly prevail based on the facts alleged in the complaint." *Rollins v. Wackenhut Servs., Inc.*, 703 F.3d 122, 127 (D.C. Cir. 2012) (internal quotation marks omitted). This is especially true when a court believes that the plaintiff lacks standing to pursue his or her case. *See Lee's Summit v. Surface Transp. Bd.*, 231 F.3d 39, 41 (D.C. Cir. 2000) ("When there is doubt about a party's constitutional standing, the court must resolve the doubt, *sua sponte* if need be.").

Standing alone, a "claim that the Constitution has been violated" is insufficient to confer standing under Article III. *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 485 (1982).

Mr. Durbin is candid that since he was "denied entrance into the Complex, Wednesday, October 27, 2021," amidst the COVID-19 temporary access limitations, he vowed "[n]ever again," to attempt access "without a formal, written understanding [from Defendants] for Plaintiff's access." Am. Compl., ECF No. 6-2, PAGEID #: 213, ¶ 314. Thus, Mr. Durbin has not alleged that he has been denied entry into the Capitol and congressional office buildings since the COVID restrictions on public access to the buildings were lifted. Instead, he alleges, among other things, that he potentially could be "detained, arrested, his papers and electronic devices seized . . . in a 'set up,' a 'trap' set by members of Congress, by the sergeants at arms, the chief and officers of the Capitol Police, because one citizen foolishly grew tired of his unanswered correspondence," Am. Compl., ECF No. 6, PAGEID #: 123-24, ¶ 15. Mr. Durbin also allegedly "suspects that there exists unconstitutional and illegal, non-public, non-disclosed rules…attempting to control—*and interfere*

9

*with*—the constitutionally protected access by citizens, by this Plaintiff, to their congressional offices." Am. Compl., ECF No. 6-2, PAGEID #: 213, ¶ 314.

To confer standing, injuries must be "concrete" and not "hypothetical," and the speculative allegations that there are unspecified policies that may prevent him from entering or that he could potentially be denied entry, detained, or arrested during some theoretical future attempt to enter the Capitol and congressional office buildings cannot support an injury for standing purposes.[3] *See Spokeo, Inc.*, 578 U.S. at 340 ("A 'concrete' injury must be '*de facto*'; that is, it must actually exist."). To be "concrete," an injury must be "'real,' and not 'abstract.'" *Spokeo*, 578 U.S. at 340. "For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way." *Id.* at 339 (citations omitted). It is well established that "a plaintiff raising only a generally available grievance about government—claiming only harm to his and every citizen's interest in proper application of the Constitution and laws and seeking relief that no more directly and tangibly benefits him than it does the public at large—does not state an Article III case or controversy." *Lujan*, 504 U.S. at 573-74.

Also, Mr. Durbin's claim that he was denied a formal press credential[6] also fails to establish his standing. Notwithstanding that there is no record of Mr. Durbin ever applying for and being denied a press credential through the established credentialing process, it is entirely speculative that there are any activities he plans to pursue in the Capitol and congressional office buildings that he could not perform without a press credential.

Finally, as to his causes of actions related to the national debt[7], Mr. Durbin's Amended Complaint

---

[6] *See* Am. Compl., ECF No. 6-2, PAGEID #: 219-20, ¶¶ 336-346.
[7] *See* Am. Compl., ECF 6-1, PAGEID #: 182-207, ¶¶ 199-301; *id.* at ECF No. 6-2, PAGEID #: 208-212, ¶¶ 302-310 ("CLAIMS FOR RELIEF, Count I: Violation of Borrowing Money," "Count II: Violation of Debt Payments," "County III: Violation of Reporting Requirements," "Count IV: Violation of Regulating the Value of Money," "Count V: Violation of Necessary Laws," "Count VI: Violation of Money Drawn From Treasury For Appropriations Made by Law," "Count VII: Violation to Advise Congress," "Count VIII: Violation of 31 U.S.C. § 3101(b), Illegal Suspensions of the Public Debt Limit…", "Count IX: Violation of the Debt Requirement, Fourteenth Amendment," "Count X: Violation of the Annual Appropriation Law by Congress.")

fails to demonstrate any concrete or particularized injury to himself. In fact, he concedes throughout the Amended Complaint that the alleged harm caused by Defendants related to the public debt is not particular to him but rather extends to all citizens broadly. *See, e.g.* Am. Compl., ECF No. 6, PAGEID #: 117, ¶ 5 ("A dishonest and corrupt, 'broken' Public Debt limit . . . likely to cause financial markets to buckle, ruin the finances of the nation, and unleash seemingly unending hardships for most Americans."); *id.* ECF No. 6-1, PAGEID #: 173, ¶ 174 ("the worries of the public for the present and future financial health and sustainability of the nation [] has never been the highest priority for these Defendants"); *id.* PAGEID #: 175, ¶ 180 ("The heaviest burden falls upon this Court to act in these matters, one at a time and in summation, balancing all against the greatest public good."). Such alleged harm to his – and every other person's – interest in the government's compliance with the Constitution and laws constitutes nothing more than a generalized grievance that is insufficient to demonstrate a cognizable injury for Article III standing. *See Lujan*, 504 U.S. at 573-74 (Supreme Court has "consistently held that a plaintiff . . . claiming only harm to his and every citizen's interest improper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large [] does not state an Article III case or controversy."); *Lance v. Coffman*, 549 U.S. 437, 439 (2007) ("[A] plaintiff raising only a generally available grievance about government – claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large – does not state an Article III case or controversy.") (internal quotation marks and citation omitted); *Horne v. Fed. Reserve Bank of Minneapolis*, 344 F.2d 725, 726-28 (8th Cir. 1965) (dismissing for lack of particularized injury complaint alleging that Federal Reserve Banks were "coining money" in violation of the Constitution and that laws

11

establishing them amounted to "an unconstitutional delegation of legislative authority.").

As a result, Mr. Durbin does not have standing even if his claims were actionable.

### B. This action cannot proceed without a valid waiver of sovereign immunity.

The United States is a sovereign, and to bring a lawsuit against it or its agencies or officers sued in their official capacities, as these Defendant federal officers have been, a party must identify an express waiver of sovereign immunity and statutory authority granting subject matter jurisdiction. As a rule, "'the United States, as sovereign, is immune from suit save as it consents to be sued.'" *United States v. Mitchell*, 445 U.S. 535, 538 (1980) (quoting *United States v. Sherwood*, 312 U.S. 584, 586 (1941)). "It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." *United States v. Mitchell*, 463 U.S. 206, 212 (1983).

"In general, federal agencies and officers acting in their official capacities are also shielded by sovereign immunity." *Merida Delgado v. Gonzales*, 428 F.3d 916, 919 (10th Cir. 2005), citing *Wyoming v. United States,* 279 F.3d 1214, 1225 (10th Cir. 2002). This immunity extends to federal officials acting in their official capacities. *See Danos v. Jones*, 652 F.3d 577, 581 (5th Cir. 2011) ("[C]laims against officers of the United States in their official capacities are actually claims against the sovereign."). This includes members of Congress as individuals acting in their official capacities. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the [government] entity."); *Rockefeller v. Bingaman*, 234 F. App'x 852, 855 (10th Cir. 2007) (agreeing that sovereign immunity foreclosed claims against Representative and Senator defendants acting in their official capacities); *Keener v. Congress*, 467 F.2d 952, 953 (5th Cir. 1972) (per curiam) (affirming dismissal because Congress is "protected from suit by sovereign immunity"); *Voinche v. Fine*, 278 F. App'x 373 (5th Cir. 2008) (sovereign immunity barred suit against Members of Congress for failure to take official action in

response to plaintiff's claims); *see also Keener v. Congress of the United States*, 467 F.2d 952, 953 (5th Cir.1972) (per curiam); *Danihel v. Off. of the President of the United States*, 616 F. App'x 467, 470 n.2 (3d Cir. 2015) (noting that constitutional claims against Members of Congress in their official capacity were barred by sovereign immunity); *McLean v. United States*, 566 F.3d 391, 401 (4thCir. 2009); *Maarawi v. U.S. Congress*, 24 F. App'x 43, 44 (2d Cir. 2001) (holding Congress protected by sovereign immunity from suit claiming that Members made derogatory remarks about plaintiff).

The United States' consent to be sued is "a prerequisite for jurisdiction." *Mitchell*, 463 U.S. at 212. For the United States to waive this sovereign immunity, the waiver "'cannot be implied but must be unequivocally expressed.'" *Id.* (quoting *United States v. King*, 395 U.S. 1, 4 (1969)). When the United States has not waived its sovereign immunity, the lawsuit must be dismissed. *Flute v. U.S.*, 808 F.3d 1234, 1239 (10th Cir. 2015) *cert. den.* 2016 U.S. LEXIS 5182 (U.S., Oct. 3, 2016). Even if a lawsuit is brought pursuant to a statute in which the United States expressly waives its sovereign immunity, the suit must strictly comply with the terms of the statute or else it is subject to dismissal. *Sherwood*, 312 U.S. at 590.

Mr. Durbin fails to identify any statute that waives the sovereign immunity of any of the Defendants in their official capacities to this lawsuit, *see United States v. Nordic Village, Inc.*, 503 U.S. 30, 33 (1992) ("Waivers of the Government's sovereign immunity, to be effective, must be unequivocally expressed.") (internal quotation marks and citation omitted), and, therefore, the Court lacks jurisdiction over his suit against any of the Defendants in their official capacities.

### C. Mr. Durbin's claims are also barred by absolute legislative immunity

The Speech or Debate Clause of the Constitution provides that "for any Speech or Debate in either House, [Senators and Representatives] shall not be questioned in any other Place." U.S. Const. art. I, § 6, cl. 1. This clause affords Members of Congress an absolute immunity from all

13

suits for damages, injunctions, or declaratory judgments arising out of actions regarding "matters which the Constitution places within the jurisdiction of either House." *Gravel v. United States*, 408 U.S. 606, 625 (1972); *Doe v. McMillan*, 412 U.S. 306, 311 (1973) (Clause protects Members of Congress from suit arising out of "anything generally done in a session of the House by one of its members in relation to the business before it.") (internal quotation marks and citation omitted); *see also McCarthy v. Pelosi*, 5 F.4th 34, 38 (D.C. Cir. 2021) ("[T]he 'Supreme Court has consistently read the Speech or Debate Clause 'broadly' to achieve its purposes.'") *quoting Rangel v. Boehner,* 785 F.3d 19, 23 (D.C. Cir. 2015). "[T]he Clause applies not just to speech and debate in the literal sense, but to all 'legislative acts.'" *McCarthy, Id.,* citing *Doe v. McMillan*, 412 U.S. 306, 311–12, 93 S. Ct. 2018 (1973). The purpose of the Clause "is to insure that the legislative function the Constitution allocates to Congress may be performed independently," *Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 502 (1975), "without regard to the distractions of private civil litigation . . ." *Brown & Williamson Tobacco Corp. v. Williams*, 62 F.3d 408, 415 (D.C. Cir. 1995); *see also McCarthy*, 5 F.4th at 38 ("The central object of the Speech or Debate Clause is to protect the independence and integrity of the legislature.") (internal quotation marks and citation omitted).

Here, the bulk of Mr. Durbin's claims against Congressional defendants involve matters within the sphere of legislative activity that the Constitution assigns to Congress, and thus are squarely barred by the Speech or Debate Clause of the Constitution. First, his claims related to the national debt and congressional appropriations are based on legislation passed by Congress.[8] Passing legislation is "quintessential legislative activity" protected by the Speech or Debate Clause. *See*

---

[8] *See* Am. Compl., ECF 6-1, PAGEID #: 182-207, ¶¶ 199-301; *id.* at ECF No. 6-2, PAGEID #: 208-212, ¶¶ 302-310 ("CLAIMS FOR RELIEF, Count I: Violation of Borrowing Money," "Count II: Violation of Debt Payments," "County III: Violation of Reporting Requirements," "Count IV: Violation of Regulating the Value of Money," "Count V: Violation of Necessary Laws," "Count VI: Violation of Money Drawn From Treasury For Appropriations Made by Law," "Count VII: Violation to Advise Congress," "Count VIII: Violation of 31 U.S.C. § 3101(b), Illegal Suspensions of the Public Debt Limit…", "Count IX: Violation of the Debt Requirement, Fourteenth Amendment," "Count X: Violation of the Annual Appropriation Law by Congress.")

*Eastland*, 421 U.S. at 504 (explaining that "consideration and passage or rejection of proposed legislation" is "integral" to legislative activity); *Gravel v. United States*, 408 U.S. 606, 617 (1972) (legislative immunity protects "the act of voting"). Because Mr. Durbin's claims seek to hold Congressional defendants liable for their quintessential legislative activity, they are barred by the Speech or Debate Clause.

In addition, any actions regarding the consideration and denial of press credentials[9] also constitute legislative activity protected by the Speech or Debate Clause. *See Consumers Union of U.S., Inc. v. Periodical Correspondents' Ass'n*, 515 F.2d1341, 1348-51 (D.C. Cir. 1975) (denial of application for admission to the congressional press galleries by periodical correspondents' association acting pursuant to express delegation of authority as aides or assistants of Congress fell "within the spheres of legislative power committed to the Congress and the legislative immunity granted by the Constitution.") Thus, the Speech or Debate Clause acts as an absolute bar to Mr. Durbin's claims related to his alleged denial of a press credential.

Because Mr. Durbin's claims seek to hold the Congressional defendants liable for matters within the sphere of legislative activity that the Constitution assigns to Congress, such claims are barred by the Speech or Debate Clause. This is true notwithstanding Mr. Durbin's conclusory and unfounded allegations that the Congressional defendants violated the Constitution. Speech or Debate Clause protections are not abrogated by allegations of improper conduct. *See, e.g.*, *Doe v McMillan*, 412 U.S. 306, 312-13 (1973) (concluding that the Clause applies to *all* legislative actions, "even though the[] conduct, if performed in other than legislative contexts, would in itself be unconstitutional or otherwise contrary to criminal or civil statutes"). "An act does not lose its legislative character simply because a plaintiff alleges that it violated House Rules, . . . or even the Constitution." *Rangel v. Boehner*, 785 F.3d 19, 24 (D.C. Cir. 2015) (citing cases). "Such is the

---

[9] *See* Am. Compl., ECF No. 6-2, PAGEID #: 219-20, ¶¶ 336-346.

nature of absolute immunity, which is—in a word—absolute." *Id.*

Therefore, the Speech or Debate Clause acts as an absolute bar to Mr. Durbin's claims.

### D. Mr. Durbin Fails to State a Claim for Relief.

In considering 12(b)(6) motions, a court is not required to accept as true conclusory statements or legal conclusions couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* at 678. A court must "draw on its judicial experience and common sense" to determine "whether a complaint states a plausible claim for relief." *Id.* at 679. *See also Warnick v. Cooley*, 895 F.3d 746, 751 (10th Cir. 2018).

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must first comply with Rule 8(a)(2), which requires "'a short and plain statement of the claim showing that the pleader is entitled to relief,'" in order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Here, the plausibility requirement of Rule 8 has not been met.

Mr. Durbin claims that he is entitled to written, formal "preapproval for his free-and-easy access," "to all 435 representatives and all 100 senators" within the Capitol and congressional office buildings and does not claim that he has even attempted access to the Capitol and congressional office buildings, much less that he is prohibited from entering the Capitol and congressional office buildings. *See* Am. Compl., ECF No. 6-2, PAGEID #: 213-14, ¶¶ 314-16 (emphasis in original). And it is Congress' "refusal to respond to the written requests, [that] have denied Plaintiff's First Amendment rights to the Free Exercise of his Religion in the Complex. That right, by itself, and in the 15 possible combinations with speech, press, assembly, and petition." *Id.*, at PAGEID #: 214, ¶

16

316.

The Amended Complaint's allegation that Congressional defendants were not responsive to Mr. Durbin's entreaties fails to state a claim as a matter of law. "Nothing in the First Amendment or in th[e Supreme] Court's case law interpreting it suggests that the rights to speak, associate, and petition require government policymakers to listen or respond to individuals' communications on public issues." *Minnesota State Board for Community Colleges v. Knight*, 465 U.S. 271, 285 (1984). The decision of a Member of Congress or Officer not to intervene on behalf of a constituent, or otherwise respond to queries from constituents or other persons, is "neither inappropriate nor actionable." *Richards v. Harper*, 864 F.2d 85, 88 (9th Cir. 1988); *see also McDonough v. Ney*, 599 F. Supp. 679, 683 (D. Me. 1984).

Indeed, no court, under any theory of liability, has ever recognized a cause of action against a Member of Congress for taking, or failing to take, action to an individual's satisfaction. *See Apple v. Glenn*, 183 F.3d 477, 478-79 (6th Cir. 1999) (affirming *sua sponte* dismissal for lack of subject matter jurisdiction of action based on implausibility of First Amendment claims against United States Senator and other top government officials for their alleged failure both to respond and to take action in response to plaintiff's requests); *Newell v. Brown*, 981 F.2d 880, 887 (6th Cir. 1992) (upholding dismissal of claim against congressman arising out of service to a constituent, stating "[f]or the federal judiciary to subject members of Congress to liability for simply doing their jobs would be unthinkable" because it would violate the separation of powers doctrine); *Adams v. Richardson*, 871 F. Supp. 43, 45 (D.D.C. 1994) ("Plaintiff has no constitutional right to have [the] Congressman . . . make particular decisions or take particular actions."); *Richards v. Harper*, 864 F.2d 85, 88 (9th Cir. 1988) (holding that a congressman's "failure to assist [a constituent] was neither inappropriate nor actionable"); *Daviscourt v. Claybrook*, 2019 WL 3458000, at *5 (W.D. Wash., July 31, 2019) (dismissing claims that Senate staffer "fail[ed] to investigate the IRS' alleged

wrongdoing"), *aff'd*, 821 F. App'x 855, 856 (9th Cir. 2020); *Damato v. Rell*, 2010 WL 2475666, at *3 (D. Conn. June 14, 2010) ("The refusal of a member of Congress to assist a constituent . . . does not constitute a cognizable claim"); *Lannak v. Biden,* 2007 WL 625849, at *2 (D. Del. Feb. 27, 2007) (same).

Simply put, there is no duty for Members of Congress or Officers to individualize the terms of existing public access to enable Mr. Durbin's requests to provide "a formal, written understanding for Plaintiff's access." Therefore, his claim that Congressional Defendants violated his First Amendment rights by failing to respond in writing that he has "unfettered access" to the Capitol and congressional office buildings fails on the merits.

Claims that cannot state a proper basis for relief are subject to dismissal with prejudice under Rule 12(b)(6) for failure to state a proper claim for relief. The claims presented by Mr. Durbin are implausible by their very nature and would only add to the number of bureaucratic hoops from which he demands waiver.

Further, a court is not "required to review voluminous extraneous materials in an effort to address deficiencies in the complaint and identify facts to support a plaintiff's legal theories." *Rusk v. Univ. of Utah Healthcare Risk Mgmt.*, 2016 UT App 243, ¶ 7, 391 P.3d 325, 327. In this case, Mr. Durbin's Amended Complaint numbers 141 pages, split by necessity into three separate ECF entries. *See* Am. Compl., ECF Nos. 6, 6-1, and 6-2, PAGEID #: 114-255. The text of the Amended Complaint includes 402 numbered paragraphs of allegations, and 58 individually numbered elements to the prayer for relief. This same Amended Complaint additionally includes 17 individually identified exhibits, encompassing two separate ECF entries and numbering 35 pages. *See id.*, ECF Nos. 6-3, 6-4, PAGEID #: 256-291.

Accordingly, Mr. Durbin's Amended Complaint is also and alternatively subject to dismissal with prejudice for failure to state a cognizable claim, and this case should be dismissed under Rule

18

12(b)(6).

## IV. CONCLUSION

For the reasons explained above, Mr. Durbin's Amended Complaint should be dismissed with prejudice for lack of subject-matter jurisdiction because he lacks standing and subject matter jurisdiction, or alternatively dismissed with prejudice for failure to state a claim upon which relief can be granted.

Respectfully submitted,

KELLY A. NORRIS
ACTING UNITED STATES ATTORNEY

s/Christopher R. Yates
CHRISTOPHER R. YATES (0064776)
Assistant United States Attorney
Attorney for Defendants
303 Marconi Boulevard, Suite 200
Columbus, Ohio 43215
Christopher.Yates@usdoj.gov

## CERTIFICATE OF SERVICE

I certify that on the 4th of April 2025, I electronically filed the foregoing using the CM/ECF system, which sends notification of such filings to Plaintiff, *pro se* upon this Court's granting in part Plaintiff's Motion to Obtain Electronic Case Filing Rights, (ECF No. 3), to the extent that Plaintiff, *pro se* may receive documents filed in this action electronically.  ECF No. 5.

s/Christopher R. Yates
Christopher R. Yates (0064776)
Assistant United States Attorney