IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**JOHN PAUL DURBIN,**

*Plaintiff,*

v.

**JOSEPH BIDEN,** in his official capacity
as 46th President of the United States; and
**JANET YELLEN,** in her official capacity
as 78th Secretary of Treasury; and
**DONALD TRUMP,** in his official capacity
as 47th President of the United States; and
**SCOTT BESSENT,** in his official capacity
as 79th Secretary of Treasury; and et .al.,

*Defendants.*

Case No. 2:25-cv-00013-MHW-KAJ

**PLAINTIFF'S MOTION FOR CONSOLIDATED SERVICE
VIA UNITED STATES ATTORNEY**

### I. COMPLETION OF SERVICE FOR ORIGINAL TWELVE DEFENDANTS

1. Plaintiff this day concurrently mailed to the Court a CERTIFICATE OF SERVICE for the original 12 Defendants for service of Complaint and summons, mailed January 12, 2025.

2. By information and belief, Plaintiff, to the best of his ability, complied with the *Pro Se* Handbook and the Local Civil Rules for SERVICE OF PROCESS for the initial Defendants.

3. Plaintiff explained his confusion with the Order of the Court (Doc. 5), in today's concurrently filed CERTIFICATE OF SERVICE.

4. Plaintiff asks the Court: What happened to those ten-of-twelve PS FORM 3811 "green cards" for the USPS Certified Mail of Complaint and summons which were "legally accepted" by an authorized agent (with $12 each, spent by Plaintiff for "restricted delivery")?

5. What was the proper form of service for those 12 Defendants? Was Plaintiff to have

requested a waiver of service (which he did not do)? Was Plaintiff correct, using a summons served via USPS Certified Mail, with PS FORM 3811 addressed to the clerk of court?

6. With Plaintiff's filing a CERTIFICATE OF SERVICE for the original 12 Defendants: which Defendants have been properly served—to a point of acceptance by this Court? None? Two? Twelve? Inherent in this seemingly simple answer, the Court will (should) illuminate these now-cloudy issues of service, not fully explained in the *Pro Se* Handbook and still not fully clarified in the Local Rules which, apparently, never foresaw such a bizarre and inconclusive endpoint.

7. If the Court finds service incomplete (unacceptable) at this moment, what comes next? Who must do what? Does Plaintiff need ask for an extension for time to complete this tortuous process? Then Plaintiff so asks that of this Court.

8. If this Court Orders individual service on these initial 12 Defendants, Plaintiff then respectfully requests the Court to order service by United States Marshal Service upon whichever of these 12 Defendants the Court has judged to have not had their service completed. Should the Court accept this request, instruct Plaintiff for the procedures for delivery of the necessary documents to the clerk of Court (and/or the Marshal Service). The United States Marshals shall present the Complaint and summons to each Defendant, returning USM-285 to the Court as proof of service.

9. Plaintiff respectfully asks this Court to request an inquiry—solely by the administrative judge(s) for the Southern District of Ohio, either in Columbus, and/or Cincinnati—into what happened to these mailings; where the fault lies; why would SDOH ever, going forward, allow-or-accept service by USPS Certified Mail upon (at the very least) federal officials in Washington, D.C., with this record sitting before SDOH? Plaintiff understands how odd and unusual this request. And, other than issues and questions concluding service in this case for the original 12 Defendants, with 113 added Defendants, this messy situation is not Plaintiff's responsibility nor need to remedy for SDOH, nor have any inquiry, unless so deemed by this Court, to come back to the

record of this case.

10. Plaintiff's intent, clearly presented in the Amended Complaint, is that the substitution of Defendants Trump, Bessent, and Vought, for Biden, Yellen, and Young does not occur and is not accepted by this Court. Plaintiff contends his causes of actions date to the years before this case was filed and justice, true, straight, and complete, in the opinion of this Plaintiff, calls for the Court to judge declarative relief and other remedies for the actions of these three Defendants.

11. Should Counsel for the Defense choose any statement/filing to this Court casting doubt upon or rejecting legal service upon Defendants Biden, Yellen, and Young, Plaintiff stands ready to respond to the Court for these matters and those arguments for these Defendants.

12. Now, a troubling conclusion to this section. Plaintiff filed his first case on some of the issues in *Durbin v. Biden*, over two years ago, in *Durbin v. Pelosi*, of October 20, 2022. Plaintiff was unsure of the *Pro Se* legal process, thereby failing to initiate service of the complaint upon those Defendants until mid-November 2022. Plaintiff asked that Court for service by United States Marshals (Doc. 2), which that Court refused.

13. Reading that Motion For Marshals today, two passages jump out at me:

> There is an impossible "chain-of-custody" along with its concurrent timeline (or delays), if this plaintiff would choose to mail "Service" by USPS certified mail to the six-of-seven defendants whose offices are within the United States Capitol complex (paragraph 2, page 1).

> Further, that makes these six (if not seven) defendants among the most unique of all federal officials; they are in their own buildings, under their complete control, with their own police force, a police force with sole control over all outside individuals entering their citadel, regardless of office or duty to be performed; that sole control includes all mail and package deliveries for the members of Congress. Plaintiff bring this impossible conflict of interest to the court's attention, seeking an immediate answer and redress (still paragraph 2, on pages 1 & 2).

14. That process of service, in spite of Plaintiff's worst fears, went off without a hitch.

— 3 —

That USPS Certified Mail process, for the Washington D.C. federal district court, did not require PS FORM 3811; acceptance of the certified mail—as noted online by USPS, served as the final, formal proof. Certificate of Service, Case 1:22-cv-03222-CRC, filed by Plaintiff January 12, 2023 (Doc. 4).

15. How prescient that Motion For Marshals. Those concerns regarding the unitary nature of Congress, its buildings, its officers and staff, its police force, its inbound mail, who-does-what with inbound mail, where-and-when do those action occur. Where are the USPS mail carriers in this process; where is the "hand off?"

16. What does it mean when USPS "attests" that Speaker Mike Johnson received his complaint and summons "Delivered, Left with an individual" at 12:20 p.m. Wednesday, January 15, 2025 (marking 87 hours after mailing in Columbus, Ohio)? Where-oh-where did PS FORM 3811, No. 9589 0710 5270 1308 9219 95 go? How did ten-of-twelve go completely missing? How did two PS FORM 3811 suddenly appear in late March?

17. Defendant Fischer's PS FORM 3811 arrives March 24, 2025, but signed for on January 15, 2025. That's 68 days later that it arrives at the clerk of court.

18. Defendant Swagel's PS FORM 3811 arrives March 31, 2025, but signed for on January 16, 2025. That's 74 days later that it arrives at the clerk of court.

## II. ISSUES OF DELAYED SERVICE FOR 113 DEFENDANTS

19. Plaintiff apologizes to this Court for the long delay by the Plaintiff for commencing service upon the additional Defendants. Plaintiff points to the explanations in the concurrently filed Certificate of Service related to service for the original 12 Defendants. That said, many more explanations are necessary to paint the complete picture and this Plaintiff's dilemmas.

20. Plaintiff was concerned, worried, stressed, and doubtful for all matters related to Service of Process for the original 12 Defendants. While much has already been put to the page in the concurrently filed Certificate of Service, Plaintiff attempted to keep that document as factually

grounded as necessary and appropriate. But it does not tell the full story. First, Plaintiff was wholly consumed, from the original filing of January 8, 2025, until the filing of the amended complaint, February 5, 2025, with the preparation of that second filing. And, since service on the initial 12 was "incomplete," there seemed that there was nothing more to do (or needed done) do but wait.

21. Second, as noted in the Certificate of Service (for the original filing), Plaintiff was not enlightened by Order of the Court (Doc. 5) for the following issues: (1) Was the initial mailing of service to the original 12 Defendants still valid? If yes, then there seemed no need for the Plaintiff to "cure" that process, albeit an open, ongoing, incomplete process. If the service by summons of January 12 were not valid . . . but this point was not made in the Order of the Court (Doc. 5). Further, Plaintiff took the Order of the Court as a rebuke and did not wish to "try the Court's patience" further on this matter unless absolutely necessary. (2) Per this original "misstep," as stated by the Court (Doc. 5), Plaintiff's January 13 to mid-April assumptions were that Plaintiff should proceed with waiver of service for the 113 Defendants which were added in the amended complaint. However—

22. This Plaintiff was "frozen in place" by those PS FORM 3811 from the original 12 Defendants which had not been returned to the clerk of court. Again, Plaintiff reminds the Court of the postage paid by Plaintiff, on January 12, 2025. As I prepare this document I have reviewed my credit card transactions: $382.20 was paid to mail to 14 recipients (12 Defendants, two notice to counsel), at a cost of $27.30 each. However, USPS online is an impossible mess, and this postal customer wasted $13.63 and $40.89, on January 11, 2025, attempting to use USPS online to prepare for mailing to the three political Defendants; but something about a QR code which I could not obtain at USPS online, which the postal employee, when later questioned in person, could not fully explain or remedy. With all these matters pressing, Plaintiff has had no time to pursue a postal refund.

23. Over February and March, Plaintiff was waiting for the original 12 PS FORM 3811 to be returned. Little did the Plaintiff guess that he would need to become a self-educated "expert" on

all of the issues of service before all of this was over. Thus, Plaintiff did not make an extensive, painstaking review for each-and-every last point on matters of service. Suddenly, as odd as it could be, Defendant Fischer's PS FORM 3811 arrives March 24, 2025, and Defendant Swagel's PS FORM 3811 arrives March 31, 2025.

24. What did these two docket entries mean? Plaintiff, as April began, asked himself this because there were nothing but a slew of troubling questions (a) for the other ten; (b) where does this matter stand before the Court; (c) and/or what next steps are incumbent upon the Plaintiff to make.

25. What did all that mean for completing service for the added Defendants?

26. The Amended Complaint added 113 Defendants. Three Defendants are new officers of the executive branch. Otherwise, 110 of the offices for those Defendants are located on Capitol Hill, with 104 of those Defendants members of Congress.

27. The Amended Complaint, of 171 pages, with its seven-page Attachment #1, makes 178 pages to be printed; assuming a cost of $0.10 per page, that's $17.8 per Defendant.

28. As noted to the Court, in the CERTIFICATE OF SERVICE, Plaintiff paid USPS for "restricted delivery" service which was/is supposed to provide for a more legally binding signature by an agent-or-officer or Defendant; the total cost for USPS Certified Mail with PS FORM 3811 to be returned to the clerk, Kinneary Courthouse, came to $27.30 per Defendant.

29. Prospectively, the total cost to Plaintiff for service for 113 Defendants: $3,085 to USPS for mailing and $2011 for printing, for a total of $5,096.

30. An important point to the Court. Every other person in this legal proceeding is either a lawyer, a lawyer with clerks and staff, a judge with clerks and staff, or a defendant with government paid for lawyers with their clerks and staff. Everyone else, excluding the defendants, deals with these matters on a regular basis. They know the ropes. This *Pro Se* claimant does not.

31. An important point, from the SDOH *Pro Se* Handbook. I. INTRODUCTION. Page 3,

third paragraph, its final sentence: **Please note, however, that the Clerk's Office employees and the Judges' staff are prohibited from giving you legal advice.** (these words in bold total 19)

32.     This Plaintiff took the Order of this Court (Doc. 5) to be a rebuke. Further, there sits those clear (but absolutely NOT CLEAR) 19 words. To wit, for this Plaintiff, for this case, for these matters: Should I have sought answers from the clerk's office for my confusion regarding all of these matters of service? But I have been rebuked by the Court. And this *Pro Se* Plaintiff can't begin to guess where the line is which demarcates those service of process questions which clerk's office can answer versus those which it cannot.

33.     It is only as April begins that Plaintiff realizes he must act to clarify these matters, not only for himself but for the Court and its docket. But Plaintiff has now decided to file an affidavit with the Court regarding the menacing verbal assault upon his person, at the Kinneary Courthouse, January 8, 2025. Authoring that document necessitated a traumatic reliving of that event. So the first-half of April was consumed by preparing that affidavit while waiting-and-wondering of the missing ten PS FORM 3811 from the remaining, initial Defendants.

34.     It isn't until mid-April that the Plaintiff realizes (1) problems with the initial Service of Process; (2) Plaintiff must thoroughly review the *Pro Se* Handbook and the Local Rules; (3) Plaintiff finally understands(?) the Certificate of Service for the initial 12, meaning; (4) Plaintiff failed to file said certificate with the Court, but; (5) *but a second document* needs to more fully explain Plaintiff's actions, but; (6) that still leaves at least these ten Defendants whose service must be answered for by both Plaintiff and the Court, but that necessitates (7) *this second document*, with its additional explanations concluding with; (8) Plaintiff's specific questions and requests directed to this Court. All this, for a non-lawyer, for a process which seemed to have been fairly straightforward, but one that's become a nightmare . . . with all of that needing to be fully documented to the Court.

### III. SERVICE FOR ALL DEFENDANTS ON THE UNITED STATES ATTORNEY

35. Plaintiff notes to the Court the tortuous record in Plaintiff's Certificate of Service, concurrently filed this day, along with all of the awful details in this document.

36. Plaintiff notes the cost to himself, and the impracticality and delays for each of the 113 new Defendants to be served individually, including part of that burden upon the clerk of court.

37. Plaintiff notes that all 113 new Defendants are represented by the United States Attorney, already so engaged on behalf of the original 12 Defendants.

38. If an extension of time for the completion of service for these 113 Defendants, named in the Amended Complaint of February 5, 2025, is necessary, Plaintiff hereby requests that of this Court for a reasonable amount of time—both for the Plaintiff's fulfillment of his duties and for the then necessary time for the rest of the process to play out and conclude.

39. Plaintiff hereby requests an order from this Court which accepts the arguments of this motion. Plaintiff requests this Court accept as completed Service of Process for all 125 Defendants upon a filing of the appropriate document(?) by the United States Attorney, Counsel for all Defendants. Plaintiff asks what-if-any additional documents it requires, beyond this motion, to complete Plaintiff's role. Alternatively, either the United States Attorney may propose a document which it will file or the Court may choose to issue its Order directing what it requires filed by Defense Counsel. Plaintiff stands ready to assist the Court and the Defense as required.

Date: April 24, 2025

Respectfully submitted,

*John Paul Durbin*

JOHN PAUL DURBIN
P.O. Box 66
Walhonding, OH 43843
(571) 250-0112
BereaSandstoneScioto@proton.me
(Plaintiff's new email address)

## CERTIFICATE OF SERVICE

I hereby certify that on the 24th of April 2025, by USPS Priority, I mailed the foregoing to the Clerk of Court, Kinneary Courthouse, for filing. Upon the Clerk's Office docketing of this pleading, notice of this filing will be sent through the Court's electronic filing system to all parties represented by attorneys who are registered users of the Court's electronic filing system as provided for in Fed.R.Civ.P. 5(b)(2)(E).

*[signature: John Paul Durbin]*

JOHN PAUL DURBIN
*Pro Se* Plaintiff